**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PATSY WALKER-DABNER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-942 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| THOMAS DART, Sheriff of Cook | ) | |
| County in his Official Capacity, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Patsy Walker-Dabner brings this action against her employer Thomas Dart, Sheriff of Cook County, in his Official Capacity for racial harassment in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Action of 1964, 42 U.S.C. § 2000e, *et seq.* Currently before the Court is Defendant's motion for summary judgment [101]. For the reasons set forth below, Defendant's motion [101] is granted. The court will enter final judgment and close the case.

## I.    Background

The Court takes the relevant facts from the parties' Local Rule 56.1 statements of undisputed material facts and supporting exhibits: [102], [113-1]. The Court construes the facts in the light most favorable to the nonmoving party—here, Plaintiff. Before discussing those facts, however, the Court turns to the requirements of Local Rule 56.1.

### A.  Local Rules

Local Rule 56 "may be the most important litigation rule outside statutes of limitations because the consequences of failing to satisfy its requirements are so dire." *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). The Rule requires a party moving for summary judgment to submit a statement of material facts as to which the movant contends there is no genuine issue and

entitles the movant to judgment as a matter of law. L.R. 56.1(a)(3). The Rule further requires that such a statement consist of "short numbed paragraphs" to allow a responding party to easily answer or deny the allegations contained within. L.R. 56.1(a); *Malec*, 191 F.R.D. at 583. Accordingly, any party opposing party such a motion must file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009). "A general denial is insufficient to rebut a movant's factual allegations; the nonmovant must cite specific evidentiary materials justifying the denial." *Malec*, 191 F.R.D. at 584. Local Rule 56.1(b)(3)(B) is not satisfied by "purely argumentative denials," *id.*, or "evasive denials that do not fairly meet the substance of the material facts asserted," *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).

"When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 599 F.3d at 632 (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, [the Seventh Circuit has] consistently upheld the district court's discretion to require strict compliance with those rules." *Id.* (citing *FTC v. Bay Area Bus. Council, Inc.,* 423 F.3d 627, 633 (7th Cir. 2005); *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases)). Plaintiff failed to file a Local Rule 56.1 response to Defendant's statement of facts. Instead, she included a few citations in her response to Defendant's motion. See, e.g., [113, at 5]. Given Plaintiff disregarded Local Rule 56.1's requirements, the Court deems as admitted all of

Defendant's statements of fact that are supported by the record unless they are directly contracted by facts cited by Plaintiff. See *Salvadori v. Franklin Sch. Dist.,* 293 F.3d 989, 991–93 (7th Cir. 2002); *Huff v. UARCO, Inc.,* 122 F.3d 374, 382 (7th Cir. 1997); *Brasic v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir. 1997); *Flaherty v. Gas Research Institute,* 31 F.3d 451, 453 (7th Cir. 1994); *Herman v. Chicago,* 870 F.2d 400, 404 (7th Cir. 1989); *Bell, Boyd & Lloyd v. Tapy,* 896 F.2d 1101, 1102 (7th Cir. 1990).

## B. Facts

The following facts are undisputed unless otherwise noted. "When we cite as undisputed a statement of fact that a party has attempted to dispute, it reflects our determination that the evidence cited in the response does not show that the fact is in genuine dispute." *King v. Chapman*, 2013 WL 6709623, at *3 (N.D. Ill. Dec. 16, 2013).

Plaintiff has been employed by the Cook County Sheriff's Office since July 16, 1991, and currently works as a correctional officer overseeing the art program in Division XI of the Cook County Jail. [102, ¶¶ 1, 12.] As overseer of the art program, Plaintiff's responsibilities include bringing books and teaching detainees how to draw and paint as well as transporting detainees to the dispensary (*i.e.* the medical unit), law library, chapel, the Board of Education, or to see a social worker. [*Id.* ¶¶ 13.] She is also responsible for keeping a logbook that includes tier count and what she did on any particular day, opening doors for the nurse, the commissary, uniform changes, and linen changes. [*Id.* ¶ 14.]

During her deposition, when Defendant's counsel asked, "For the record, what is your race?" Plaintiff responded, "Indian." [*Id.* ¶ 10.] When Plaintiff's counsel asked Plaintiff what her race is, Plaintiff stated, "African-American." [*Id.*] Plaintiff then stated that she is "half black and half Indian." [*Id.* ¶ 11.]

On July 19, 2014, Plaintiff was working the 7:00 to 3:00 shift in Division XI.  [*Id.* ¶ 15.]
Her assignment was "movement officer" and she was tasked with transporting detainees from the
"A pod" to the medical unit.  [*Id.*]  Her supervisor that day was Sergeant Bozeman and she was
working with Officer Robert Walker who was assigned to the AG tier of A pod.  [*Id.* ¶¶ 16–17.]
Walker is Black.  [*Id.* ¶ 17.]

At 10:30 a.m., Plaintiff went to the A pod to gather detainees for transport.  [*Id.* ¶ 18.]  The
detainees were assigned to Walker's tier.  [*Id.*]  When she arrived, eight or nine detainees were
beating on the window, hitting the door, and yelling with additional detainees behind them.  [*Id.* ¶
19.]  In total 15 detainees were yelling for Plaintiff's attention.  [*Id.*]  The detainees were Black
and their names are unknown to Plaintiff.  [*Id.* ¶ 20.]  Correctional Officer Blake Bochnak was
standing outside the closed door.  [*Id.* ¶ 21.]  The detainees called Plaintiff's name and tried to get
her attention to tell her that they had asked Bochnak for toothpaste and toilet paper and that they
wanted to go to recreation.  [*Id.* ¶ 21.]  They told Plaintiff that Bochnak would not give them
anything.  [*Id.* ¶ 22.]  Plaintiff informed them, "that is not my tier. You have to address your officer
with things that you need."[1]  [*Id.* ¶ 22.]

At that point, according to Plaintiff, she informed Bochnak that she was picking up some
detainees and asked him why they were hitting the door.  [*Id.* ¶ 25.]  Officer Bochnak responded,
"Those are your people.  Those are not my people.  Do what you have to do for your people."
[102-3, at 39:11–13.]  Plaintiff asked, "Do you know what you're saying?" and Officer Bochnak
stated, "Like I said, those are your people. You do what you've got to do."  [*Id.* at 39:15–17.]
Plaintiff initially stated that she interpreted Bochnak's statement to mean "those are your black
people.  Those are not my people."  [*Id.* at 39:18–19.]  Later, however, Plaintiff asserted that

---

[1] On July 19, 2014, Bochnak, who is Hispanic and Plaintiff described as White, was assigned to Living Unit AH.
[102, ¶¶ 23–24.]  At the time, Officer Bochnak had worked at the jail for approximately five months.  [*Id.* ¶ 23.]

Defendant had actually stated "Those are your people. Those are your black people. Those are not my black people." [*Id.* at 52:4–5.] Immediately after this alleged comment, Walker, who had overheard the conversation, asked, "What did you say?" [*Id.* at 39:20–22.] Bochnak allegedly responded, "I'm not going to repeat myself. You understood what I meant." [*Id.* at 39:23–24.] However, in his deposition, Walker stated that he did not hear Bochnak say, "Those are your black people." [102, ¶ 35; 102-5, 35:1–3.] Despite these disagreements, because the Court must take the evidence in the light most favorable to Plaintiff, it assumes Bochnak actually stated, "Those are your people. Those are your black people. Those are not my black people."[2]

After transporting the detainees she had come for to the dispensary, Plaintiff went to her locker and cried. [102, ¶¶ 37–38.] She then told Bozeman that she was going home and took benefit time to take the rest of the day off and go home. [*Id.* ¶ 38.] Plaintiff did not tell Bozeman about the conversation with Bochnak, nor did she report the conversation to anyone else that day. [*Id.* ¶ 39.]

From July 21 to 25, 2014, Plaintiff attended an in-service training. [*Id.* ¶ 40.] During the training, Plaintiff reported the incident to Diane Good, the head union steward. [*Id.* ¶ 51.] Ms. Good advised Plaintiff to go to the EEOC. [*Id.* ¶ 52.] Ms. Good told Plaintiff that it would "do no good" to file a grievance. [*Id.*] As a result, Plaintiff did not file a grievance. [*Id.* ¶ 53.]

Plaintiff explained that she did not report the incident immediately upon returning to work the next week because she was waiting to see if Bochnak would apologize. [*Id.*] When Bochnak did not do so, she waited approximately two days before verbally complaining to Superintendent Scott Bratlien about the situation. [*Id.* ¶ 41; 102-3, at 71:12–15.] Plaintiff asserts that Bratlien

---

[2] In her deposition, Plaintiff stated that Bochnak had never made any derogatory comments to her prior to the July 19 incident. [102, ¶ 39.]

told Plaintiff to follow the chain of command at that time.[3] [102, ¶ 42.] Plaintiff subsequently spoke to Lieutenant Damita Delitz who told her that she would speak to Bochnak to see if he would apologize. [*Id.* ¶ 43.]

On July 30, 2014, Plaintiff received an email from Lieutenant Yolonda Debro, who advised her to go through her chain of command and included a copy of Sheriff's Order 11.4.5.0 (Prohibition of Discrimination and Harassment/Sexual Harassment in the Workplace).[4] [*Id.* ¶ 46.] Bratlien was also included on the email. [*Id.* ¶ 58.] Bratlien immediately contacted Lieutenant Rosario, the Division XI Shift Commander, who informed him that Plaintiff had accused Bochnak of racial harassment. [*Id.* ¶ 59.] That same day, Plaintiff wrote a "to-from memo" addressed to Bratlien, Tylka, Rosario, and Sergeant Anderson, in which Plaintiff described the incident. [*Id.* ¶¶ 45.] After speaking with Rosario, Bratlien immediately called Plaintiff into his office and she presented him with the to-from memo. [*Id.* ¶ 59.]

On or about July 31, 2014, Rosario told Plaintiff that he had spoken with Bochnak and that Bochnak refused to apologize. [*Id.* ¶ 47.] That same day, Delitz held a meeting with Plaintiff, Bochnak, Walker, and Bratlien. [*Id.* ¶¶ 47–48.] At the meeting, Bochnak apologized to Plaintiff for his comment being misunderstood as a racial or biased statement. [*Id.* ¶ 48–49.] Bratlien also explained to both officers that any type of harassment would not be tolerated and reviewed Sheriff's Order 11.4.5.0 with them. [*Id.* ¶¶ 62–63.] Bratlien also provided Plaintiff with a Discrimination/Harassment/Sexual Harassment Complaint Form ("DHS Complaint") and instructed her to complete the form as soon as possible. [*Id.* ¶ 63.] Bratlien also informed both

---

[3] Although the exact timing is unclear, Plaintiff also spoke with Officer Scott, her union steward, who advised her that she needed to "write the paperwork" for something to get done. [102, ¶ 44.]

[4] Plaintiff had reached out to DeBro, who works at the "academy," on the advice of Scott given Bochnak was still under the academy's supervision. [102-3, 91:8–22.]

Assistant Director Marilyn Martinez and First Assistant Executive Direct George Turner about Plaintiff's accusation. [*Id.* ¶ 62.]

On August 1, 2014, Plaintiff submitted the DHS Complaint to the Cook County Sheriff's Office of Professional Review (the "OPR"), in which she complained about the incident with Bochnak. [*Id.* ¶¶ 50, 67.] On August 4, 2014, Plaintiff wrote another "to-from memo" to Bratlien, Rosario, Turner, and "Executive Cara Smith (Sheriff Tom Dart),"[5] in which she described the meeting on July 31, 2014. [*Id.*] On August 5, Plaintiff submitted a Complaint Register to the OPR regarding the incident with Bochnak. [*Id.*] On August 7, 2014, Terrance Hake, the Executive Director of the OPR, sent Smith a letter requesting that the CCDOC review the documentation of the July 19 incident and conduct an inquiry. [*Id.* ¶ 67.] The letter explained that the OPR had received information regarding an incident concerning employees of the Cook County Sheriff's Office and lacked sufficient information to determine whether misconduct had been committed. [*Id.* ¶ 68.]

Bochnak was not disciplined as a result of the incident. [*Id.* ¶ 49.] Based on the information he received, Bratlien concluded that there was no evidence to substantiate the allegation that Officer Bochnak's statement was intended to be derogatory or discriminatory in nature. [*Id.* ¶ 64.] He nonetheless forwarded the information that he had received to the OPR for notification purposes. [*Id.* ¶ 65.] Bratlien also continued to monitor Bochnak's performance for future allegations of the same nature. [*Id.* ¶ 66.] Bochnak was also assigned to a different pod than Plaintiff and the Sheriff's Office ensured that Bochnak and Plaintiff were always assigned to different pods and shifts. [*Id.* ¶ 56.] Bochnak was not, however, transferred out of the division,

---

[5] Cara Smith is the Executive Director of the Cook County Department of Corrections ("CCDOC"). [102, ¶ 67.]

though Plaintiff acknowledged that the she never requested that he be transferred. [*Id.* ¶ 54.] Nor did Plaintiff ever request a transfer for herself. [*Id.* ¶ 55.]

During her deposition on August 25, 2016, Plaintiff alleged for the first time that since the July 19 incident, Bochnak has made eye contact with her and laughed; and, that about three months after the incident Bochnak had walked up to her in the parking and said, "You're all black." [*Id.* ¶ 70.] Plaintiff did not report these incidents to anyone. [*Id.*]

On October 24, 2014, Plaintiff filed a Charge of Discrimination with the EEOC, in which she alleged race and color discrimination. [*Id.* ¶ 78.] Plaintiff initiated this suit against Defendant and other defendants on July 29, 2015. [1.] On February 17, 2016, Plaintiff filed a second amended complaint, in which she alleged "Racial Harassment and Harassment in the Workplace Under Title VII of the Civil Rights Act of 1964 as amended and 42 U.S.C. 1983 et seq. of the Act." [102, ¶ 5; see also 43.] The Court has jurisdiction over Plaintiff's Title VII, and any purported § 1983 claims pursuant to 28 U.S.C. § 1331. Venue is proper in this District because the alleged events giving rise to Plaintiff's claims occurred within the Northern District of Illinois. [102, ¶ 4.]

The Court discusses additional facts below where relevant to Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). Rule 56 makes clear that whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. *Id.* In

determining whether summary judgment is appropriate, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor (here, Plaintiff). *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). But Plaintiff "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture.'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation and quotation marks omitted). Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against any party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party would bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, the moving party may meet its burden by pointing out to the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324.

It is not the role of the Court to scour the record in search of evidence to defeat a motion for summary judgment; instead, the nonmoving party bears the responsibility of identifying evidence to defeat summary judgment. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). To avoid summary judgment, the nonmoving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted). For this reason, the Seventh Circuit has called summary judgment the "put up or shut up" moment in a lawsuit—"when a party must show what evidence it has that would convince a trier of fact to accept its version of events." See *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007). In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## III. Analysis

In her second amended complaint [43], Plaintiff asserted that she sought to recover under "Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 et seq. of the Act" for the events described above. [43, ¶ 1.] However, the only cause of action listed in her second amended complaint was for racial harassment under Title VII. [*Id.* at ¶¶ 24–37.] Additionally, in her response to the instant motion, Plaintiff asserted that she had alleged a cause of action under 42 U.S.C. § 1981, [113, at 2], but only discussed Title VII claims against Defendant in his official and individual capacities, [113, at 6–10]. Defendant addressed both Title VII and § 1983 in its briefing on the motion for summary judgment. See [103], [122].

First, Seventh Circuit precedent instructs courts to treat claims under § 1981 in the same manner as claims brought pursuant to Title VII. *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) (citing *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010)). Thus, if Plaintiff has stated a claim under Title VII, she has stated a claim under § 1981. The Court will therefore treat any claim Plaintiff has purportedly brought under § 1981 as subsumed into her Title VII claim. Finally, given Defendant has briefed the issue, and Plaintiff initially claimed to be seeking to recover under § 1983, the Court will address that claim as well. For the reasons that follow, the Court concludes that a reasonable factfinder could not conclude that Defendant is liable for the harassment Plaintiff allegedly suffered.

### A. Title VII / 42 U.S.C. § 1981

Plaintiff asserts that her treatment by Bochnak and the response by Defendant subjected her to race-based harassment. Both Title VII and § 1981 prohibit employers from discriminating

against employees because of their race, color, religion, sex, or national origin. 42 U.S.C. §§ 1981, 2000e-2(a)(1). Employers are likewise prohibited from "requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1983). To prevail on Title VII claim, a plaintiff must therefore show that

> [1] he is a member of a class protected by the statute, [2] that he has been the subject of some form of adverse employment action (or that he has been subjected to a hostile work environment), and [3] that the employer took this adverse action on account of the plaintiff's membership in the protected class.

*Gates v. Bd. of Educ. of the City of Chicago*, — F.3d —, 2019 WL 698000, at *4 (7th Cir. Feb. 20, 2019) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013)). As to the second element, to prove that she has been subjected to a racially hostile work environment, an employee must provide sufficient evidence to demonstrate: "(1) that the work environment was both subjectively and objectively offensive; (2) that the harassment was based on membership in a protected class; (3) that the conduct was severe or pervasive; and (4) that there is a basis for employer liability." *Nichols v. Michigan City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) (citation and quotation marks omitted). Defendant asserts that Plaintiff has not met her burden on the first, third, or fourth elements. The Court agrees as to the third and fourth elements.[6]

### 1. Severe & Pervasive

Plaintiff's hostile work environment fails because she has not provided sufficient evidence for a reasonable juror to conclude that she was subjected to severe or pervasive harassing conduct. First, it is important to note that harassing conduct need not be both severe *and* pervasive. *Nichols*, 755 F.3d at 601. A single instance of sufficiently severe conduct may be enough. *Id.* Conversely, separate minor incidents may trigger liability if they happen frequently enough. *Id.* The key

---

[6] Because Plaintiff has unambiguously failed to develop facts that satisfy either the third or fourth elements of a hostile work environment claim, the Court does not address the much closer question of whether the alleged conduct was objectively offensive.

inquiry is whether the conduct in question is so severe or pervasive that it altered the conditions of employment. *Id.*

In determining whether the conduct is sufficiently severe or pervasive to be actionable, courts must look at the totality of the circumstances, including: (1) the frequency of the discriminatory conduct; (2) how offensive a reasonable person would deem it to be; (3) whether it is physically threatening or humiliating conduct as opposed to verbal abuse; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it was directed at the victim. *Lambert v. Peri Formworks Sys., Inc.,* 723 F.3d 863, 868 (7th Cir. 2013). "Courts should not carve up the incidents of harassment and then separately analyze each incident, by itself, to see if each rises to the level of being severe or pervasive." *Hall v. City of Chicago,* 713 F.3d 325, 331 (7th Cir. 2013) (citation and quotation omitted).

Plaintiff argues that this Court should treat Bochnak's comments on July 19, 2014 as if he used the "n-word." [113, at 8.] Plaintiff has not provided any precedent to explain why this Court should do so, and the case law in our circuit does not support such an argument. Seventh Circuit precedent has firmly established "that while there is no magic number of slurs that indicates a hostile work environment, an unambiguously racial epithet falls on the more severe end of the spectrum." *Nichols*, 755 F.3d at 601 (citations and quotations omitted). Indeed, even among "unambiguously racial epithet[s]," the n-word has been viewed as a singularly offensive manifestation of racial animus. See *Rodgers v. Western-Southern Life Insurance Co.*, 12 F.3d 668, 675 (7th Cir. 1993).

But even if Bochnak had used that epithet, one or two incidents likely would be insufficient as a matter of law to show severe or pervasive conduct given that Bochnak was Plaintiff's co-worker, not her supervisor. See *Gates*, 2019 WL 698000, at *5, 7 (holding that a *supervisor's* use

of even a few epithets was enough to survive summary judgment, but adding that "[i]f the only evidence of racial harassment Gates had was a *co-worker's* use of the three epithets uttered by Rivera, we would likely reach a different conclusion in this case"); *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002) (use of the epithet "n*****" on one occasion by a Caucasian coworker insufficient to demonstrate severe or pervasive action creating a hostile work environment); *Sanders v. Village of Dixmoor*, 178 F.3d 869, 870 (7th Cir. 1999) (use of the epithet "n*****" on one occasion during an altercation not sufficiently severe or pervasive to create an objectively hostile work environment). To be sure, referring to co-workers with such an unambiguous, disrespectful epithet is an unacceptable and deplorable workplace behavior. Nevertheless, one or two utterances of even the n-word has not been held to be severe enough to rise to the level of establishing liability for co-worker harassment under Title VII.

Before examining the specific conduct at issue, however, the Court must address Plaintiff's failure to come forward in her brief with any other purported incidents besides the July 19, 2014 encounter between Plaintiff and Bochnak. Defendant is correct that failing to raise an argument in response to the moving party's motion for summary judgment generally waives those arguments. *Nichols*, 755 F.3d at 600; see also *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Nonetheless, because Defendant included additional allegations in his statement of material facts, [102, ¶¶ 70–73], and addressed them in his motion, [103, at 7–8], the Court will consider those that are admissible in its analysis.

The summary judgment record presents two specific incidents of harassment that Plaintiff claims occurred over approximately three months: (1) the incident on July 19, 2014 in which Bochnak allegedly stated "Those are your black people. Those are not my black people. Do what

you have to do for your black people."; and (2) another incident approximately three months later in which Bochnak allegedly approached Plaintiff in the employee parking lot and stated "You're black. You're all black."[7]

First, the conduct of which Plaintiff complains cannot be called frequent. Plaintiff has worked at the Cook County Jail for almost three decades and has only identified two incidents of harassment directed towards her during that time (albeit during a three-month period). See, e.g., *E.E.O.C. v. Caterpillar Inc.,* 503 F. Supp. 2d 995, 1008 (N.D. Ill. 2007) ("The offensive conduct at issue here was arguably infrequent: Early's career at Caterpillar began in 1994 and she only claims to have suffered from sexual harassment between July 19, 2001 and July 25, 2001."). Similarly, Plaintiff has not pointed to any evidence in the record to show that the alleged comments were either physically threatening or humiliating conduct as opposed to verbal abuse, the third factor. The first and third factors therefore clearly cut against finding the conduct at issue here severe or pervasive. Conversely, the conduct at issue here was clearly and undisputedly directed towards Plaintiff; thus, the fifth factor weighs in Plaintiff's favor.

It is a much closer question regarding the objective offensiveness of Bocknak's comments and behavior (second factor); and whether that conduct unreasonably interfered with Plaintiff's work performance (fourth factor). Nonetheless, based on the nature of the comments themselves

---

[7] Plaintiff also asserted in her deposition that Bochnak has caught her eye and laughed on occasion since the July 19 incident. [102, ¶ 70.] However, she has not provided any other details related to the purported incident(s) such as the date(s), time(s), frequency, *etc.* Without any supporting details, the Court must disregard this amorphous allegation that Plaintiff also failed to raise in her response brief. *Nichols,* 755 F.3d at 599 (a plaintiff is not entitled to inferences "supported by only speculation or conjecture"). The Court also must disregard Plaintiff's testimony regarding Bochnak's alleged comments at the academy to other cadets and toward detainees at the Cook County Jail. [102, ¶¶ 71–73.] The Court may only consider admissible evidence in assessing a motion for summary judgment. *Haywood v. Lucent Technologies, Inc.,* 323 F.3d 524, 533 (7th Cir. 2003) (inadmissible evidence will not overcome a motion for summary judgment). Plaintiff did not witness the alleged statements—nor can she provide the identities of any of those that did hear the purported comments—and she asserts them for the truth of the matter asserted. [*Id.*] Both sets of comments constitute hearsay and do not fall within any exception. Fed. R. Evid. 801(c)*; United States v. Harris,* 281 F.3d 667, 671 (7th Cir. 2002). Consequently, the Court may not consider them in its resolution of the instant motion for summary judgment.

and the previous precedent in this Circuit, the Court concludes that Bochnak's comments, even assuming that they occurred as Plaintiff testified, are not sufficient to demonstrate a hostile work environment given they were isolated and infrequent. See *Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 645–46 (7th Cir. 2005) ("th[is] behavior, while questionable, was relatively isolated, and alone not actionable"); see also *McPherson v. City of Waukegan*, 379 F.3d 430, 439 (7th Cir. 2004) (explaining that "lamentably inappropriate" behavior did not create a hostile work environment "due to the limited nature and frequency of the objectionable conduct"); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (a total of eight gender-based comments over the term of the plaintiff's employment did not constitute pervasive harassment); *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 431 (7th Cir. 1995) ("The infrequency of the offensive comments is relevant to an assessment of their impact. A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage."); *North v. Madison Area Ass'n for Retarded Citizens–Development Ctrs. Corp.*, 844 F.2d 401, 409 (7th Cir. 1988) (exposure to one or two isolated epithets not sufficient to constitute hostile work environment); *Poullard v. Shinseki*, 2015 WL 1428105, at *11 (N.D. Ill. Mar. 26, 2015), aff'd, 829 F.3d 844 (7th Cir. 2016) (three incidents in which plaintiff experienced racial slurs and comments based on his sex were isolated in time, and plaintiff did not show that the comments were physically threatening or that they unreasonably interfered with his work performance).

The only statements by Plaintiff to rebut this conclusion are allegations in her response brief that lack citations to the record:

> Plaintiff was so distraught [after the July 19 incident] that immediately after the statement was made she left her post and went home where she remained for two days. At the time of this incident the Plaintiff was suffering from a mental condition that required medication, which in turn exacerbated the situation and therefore caus[ed] * * * [that conduct] to be deemed severe enough to alter the work environment.

[113, at 9.] Plaintiff's failure to cite to the record is sufficient by itself for the Court to disregard these assertions.[8] See, e.g., *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) ("we strike any of the parties' factual assertions, in any section of their briefs, that lack direct citation to easily identifiable support in the record") (citations omitted). But, even if the Court were to consider them, these allegations would not change the Court's conclusion.

First, although the comments were unacceptable, Plaintiff's use of vacation time does not establish that the behavior unreasonably interfered with her ability to do her job. While these incidents clearly upset Plaintiff a great deal—and the Court in no way minimizes the distress these incidents have caused her—nothing in the record shows that Plaintiff has been unable to continue working. In fact, the record shows that the Sheriff's Office has taken significant steps to isolate Plaintiff from Bochnak so that she may work without seeing him. See, e.g. [102, ¶ 56 ("After the incident Officer Bochnak was assigned to a different pod than Plaintiff and the Sheriff's Office ensured that Officer Bochnak and Plaintiff were assigned to different pods. * * * They were also assigned to different shifts."); ¶ 65 ([Commander Bratlien] assigned both officers to different areas within Division XI to minimize contact with each other during their tour of duty.") (citations omitted).] Thus, Plaintiff has not shown that the incidents have unreasonably interfered with her ability to work.

Second, Plaintiff's sensitivity to Bocknak's comments does not override this Court's obligation to consider whether the work environment in question was one "a reasonable person would find hostile or abusive" or whether Plaintiff misinterpreted innocent conduct because of these pre-exiting issues. *Equal Employment Opportunity Comm'n v. Costco Wholesale Corp.*, 2015 WL 9200560, at *12 (N.D. Ill. Dec. 15, 2015) (citations omitted); see also *Daniels v. Essex*

---

[8]  At least part of the allegations, namely the fact that Plaintiff took benefit time to take the rest of the day and go home, does appear in Defendant's Statement of Material Facts. [102, ¶ 38.]

*Grp., Inc.,* 937 F.2d 1264, 1271 (7th Cir. 1991) (explaining that the objective component of hostile work environment claims "places a check on claims for relief by the supersensitive 'eggshell' plaintiff"). As explained above, the incidents that Plaintiff points to and relies upon to make her case are precisely the kind that courts generally conclude do not constitute a hostile work environment, and Plaintiff's sensitivity cannot override that objective standard.

Thus, because all but one of the factors cut against finding the conduct at issue here severe or pervasive, the Court concludes Plaintiff has failed to meet her burden on the third element of her hostile work environment claim.

### 2. Employer Liability

Plaintiff's claim also fails because she has not presented facts from which a reasonable jury could conclude that there is a basis to hold Defendant liable for Bochnak's conduct. An employer's liability for a hostile work environment turns on the source of that alleged discrimination. The Seventh Circuit has stated it evaluates "the basis for employer liability differently depending on whether the alleged harassment was perpetrated by supervisor or co-workers." *Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1029 (7th Cir. 2004). "Employers are strictly liable for harassment inflicted by supervisors subject to an affirmative defense when the harassment does not result in a tangible employment action." *Id.* (citation omitted). An "employer is liable for a hostile work environment created by the employee's co-workers, however, only when the employee shows that his employer has 'been negligent either in discovering or remedying the harassment.'" *Mason v. S. Illinois Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) (citation omitted). Thus, "[a]n employer satisfies its legal duty in coworker harassment cases 'if it takes reasonable steps to discover and rectify acts of * * * harassment of its employees.'" *Cerros v. Steel Techs., Inc.*, 398 F.3d 944, 952 (7th Cir. 2005)

(citation omitted). For example, an "employer can avoid liability for coworker harassment 'if it takes prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring.'" *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 636 (7th Cir. 2009) (citation omitted). Plaintiff has not shown that Defendant exhibited any negligence in the discovery or remediation of her alleged harassment.

Plaintiff's only response to Defendant's assertion that there is no basis for employer liability is to claim that Defendant is liable because "the employer did not prevent the existence of a hostile work environment under Title 7 [sic]." [113, at 9 (citing *Cole v. Board of Trustees,* 38 F. Supp. 3d 925 (N.D. Ill. 2013).] This citation, however, is insufficient.

The opinion cited by Plaintiff arose on a motion to dismiss and does not contain any finding or examination of employer liability whatsoever. *Cole*, 38 F. Supp. 3d at 932. Moreover, on appeal from the district court's later grant of summary judgment for the defendant in that same case, *Cole v. Bd. of Trustees of N. Illinois Univ.*, 2015 WL 13309240, at *9 (N.D. Ill. May 19, 2015), the Seventh Circuit affirmed the grant of summary judgment on the specific basis that the employer had not been negligent because once plaintiff notified his employer of the harassment, it took reasonable steps in remedying the harassment by referring the matter to the police for investigation. 838 F.3d 888, at 897–98 (7th Cir. 2016). Although the court of appeals specifically disclaimed establishing that "an employer necessarily fulfills its reasonability to take appropriate corrective action if it has reported an incident to some other party," it concluded that referring the issue to police was "reasonably likely" to prevent the harassment in *Cole* from recurring. *Id.* at 898. Like the administrator in *Cole*, the Sheriff's Office acted in manner reasonably likely to prevent the alleged harassment from recurring.

The same day that Plaintiff filed her "to-from memo" detailing the July 19 incident, Bratlien spoke with Plaintiff about her claim. He also spoke with Rosario and questioned Bochnak about the incident. Bochnak admitted that he had made a comment to Plaintiff, but asserted that he had had meant no disrespect and that he did not know that his words were being perceived as racial. The next day, Bratlien met with Plaintiff and Bochnak at which point Bochnak apologized. Bratlien also informed senior management at the Cook County Jail and the Sheriff's Office of Professional Review regarding the incident. Most importantly, although Bochnak was not transferred out of the division—nor did Plaintiff request as much—he was assigned to a different pod than Plaintiff and the Sheriff's Office ensured that Bochnak and Plaintiff were assigned to different pods and different shifts. Based on these actions, the Court concludes Defendant took steps reasonably likely to prevent further harassment.

Although Plaintiff claims that Bochnak made another comment to her in the parking lot after these steps were taken, a fact that she did not raise in her response, she never reported this second incident to anyone. An employer cannot be held liable for events of which it has no knowledge. See, e.g., *Ford v. Minteq Shapes & Servs., Inc.,* 587 F.3d 845, 848 (7th Cir. 2009) (affirming summary judgment where the plaintiff complained to employer of harassment only once in fourteen months); *Parker v. Side by Side, Inc.*, 50 F. Supp. 3d 988, 1009 (N.D. Ill 2014) (granting summary judgment where plaintiff failed to inform the relevant managers of the most serious allegations of harassment without which the employer was not on notice of the alleged harassment). The second alleged incident therefore does not change the Court's conclusion.

Nor does the fact, again unmentioned by Plaintiff in her response, that Plaintiff initially told Bratlien about the July 19 incident on July 28 or 29 and that he told her "to follow the "chain of command." [102, ¶¶ 41–42; see also 102-3, 64:10–66:3.] Those facts do not suggest that

Defendant was negligent in discovering the harassment. If an employer has established procedures for reporting complaints of harassment, "the complainant ordinarily should follow that policy in order to provide notice sufficient for the employer to be held responsible, unless the policy itself is subject to attack." *Lambert*, 723 F.3d at 867. The focus of the notice inquiry, however, remains on whether the complainant adequately alerted his employer to the harassment, "not whether [the complainant] followed the letter of the reporting procedures set out in the employer's harassment policy." *Cerros,* 398 F.3d at 952–53. Thus, even assuming the facts in the light most favorable to Plaintiff, Bratlien was entitled to ask her to follow official policy, and in any event, appears to have taken significant actions within a week of their informal conversation to ensure that such harassment would not occur again. Plaintiff provides no support for the assertion that, "an employer has an obligation under Title VII to investigate immediately" [113, at 11], and the record suggests action did occur in short order, even counting from the date of Plaintiff's informal conversation with Bratlien.

In sum, the evidence, even when viewed in the light most favorable to Plaintiff, would not allow a reasonable jury to find that Defendant was negligent in discovering or remedying the harassment Plaintiff suffered. Consequently, the Court grants summary judgment to Defendant on Plaintiff's racial harassment claim.

### B. 42 U.S.C. § 1983

As Defendant correctly notes, the Second Amended Complaint only asserted one count of racial harassment under Title VII. [43, ¶¶ 24–37.] However, in the first paragraph of that complaint, Plaintiff also stated that she seeks compensatory damages under Title VII *and* 42 U.S.C. § 1983. [*Id.* ¶ 1.] While it is unclear whether Plaintiff has properly brought such a claim, the facts taken in the light most favorable to Plaintiff would not allow a reasonable jury to find in her favor in any event.

### 1. **Official Capacity**

Municipal agencies, such as the Sheriff's Office, may be "held liable under § 1983 for violating a plaintiff's civil rights through '(1) an express municipal policy; (2) a widespread practice constituting custom or usage; or (3) a constitutional injury caused or ratified by a person with final policymaking authority.'" *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009) (citation omitted). However, such an agency may not be held liable under § 1983 for an injury inflicted solely by its employees or agents as there is no *respondeat superior* liability under that statute. See, e.g., *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978); *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1390 (7th Cir. 1984). Rather, a plaintiff must demonstrate that the "municipality was the 'moving force' behind the injury alleged," generally through one of the three methods listed above. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997).

First, Plaintiff has not cited, nor produced, any facts to support the assertion in her complaint that there is a practice of discrimination against Black inmates and guards at the Cook County Jail. [43, at 19.] Plaintiff's allegations involve only one co-worker, Bochnak. While in an offhand remark during her deposition Plaintiff mentioned that the usual practice is to transfer individuals who have been accused of harassment to a different division, [102, 58:24–59:21], that one remark does not approach a showing that there is of a pattern or practice of harassment of Black guards by their co-workers at the Cook County Jail. See *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) ("To establish municipal 'custom' for § 1983 purposes, the plaintiff must show 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.') (citation omitted). Nor has Plaintiff pointed to any evidence whatsoever of a policy

approving of such harassment, or that Defendant or any of her supervisors, including Defendant, caused or ratified her alleged harassment. As explained above, Bratlien investigated Plaintiff's allegation and took active steps to ensure it did not occur again. [102, ¶¶ 56, 59–69.] The fact that he may have initially asked Plaintiff to bring her claim through the chain of the command, [*id.* ¶¶ 41–42], does not change the analysis, see *infra* Section III(A)(2). Thus, based on the evidence taken in the light most favorable to Plaintiff, the Court concludes a reasonable fact finder could not find that Defendant violated Plaintiff's rights in his official capacity.

## 2. Individual Capacity

Plaintiff does not dispute that Defendant took absolutely no part in the alleged harassment. In fact, Plaintiff disclaimed having any personal conversations with Defendant about the incident nor has she presented any evidence to believe that he was even informed of the incident. [102, ¶¶ 74–75.] "An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). "Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Id.* at 869. Plaintiff is "not entitled to the benefit of 'inferences that are supported by only speculation or conjecture.'" *Nichols*, 755 F.3d at 599 (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)). Because Plaintiff has not put forth any evidence upon which a reasonable jury could conclude in her favor on Plaintiff's § 1983 against Defendant in his individual capacity, the Court must grant summary judgment in favor of Defendant on this claim.

## IV.   Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment [101]. The Court will enter a final judgment in favor of Defendant and against Plaintiff and close the case.

Dated: March 5, 2019

_____
Robert M. Dow, Jr.
United States District Judge